**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DR. JOSEPH GRAYZEL, M.D., | : | |
| | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | Civ. No. 12-2506 |
| v. | : | |
| | : | |
| BOSTON SCIENTIFIC CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

Defendant Boston Scientific Corporation ("BSC") moves to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). Plaintiff Dr. Joseph Grayzel opposes the motion. Under Federal Rule of Civil Procedure 78, the Court grants the motion to dismiss without oral argument, and remands the case to state court.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Grayzel owns several patents relating to balloon catheters. Compl. ¶¶ 1, 5. He was issued United States Patent 4,786,629 ("the '629 Patent") in 1989 for a Stiffened Dilation Balloon Catheter Device. *Id.* ¶ 6. Dr. Grayzel believed that Interventional Technologies, Inc. ("IVT") had a product that infringed on the '629 Patent in the late 1990's. *Id.* ¶ 7. He offered IVT the opportunity to license the '629 Patent on multiple occasions, but they declined. *Id.* IVT was acquired by BSC in 2001. *Id.* ¶¶ 2, 8. Dr. Grayzel offered BSC a license for the '629 Patent, which was also declined. *Id.* ¶¶ 7, 9. Dr. Grayzel then sued BSC for infringement of the '629

**NOT FOR PUBLICATION**

Patent. *Id.* ¶ 10. BSC and Dr. Grayzel settled the suit with BSC agreeing to pay royalties for certain products to Grayzel for the remaining life of the '629 Patent. *Id.* ¶ 11.

Around the time of the settlement, BSC asked Dr. Grayzel to enter into a separate covenant not to sue BSC (the "Covenant"). *Id.* ¶ 12. Dr. Grayzel received $150,000 as consideration for the agreement. *Id.* ¶ 19. The Covenant took effect September 19, 2003. *Id.* Ex. 1.

The Covenant pertains to two pending patent applications. *Id.* One patent application (the "Patent Application") was filed by Dr. Grayzel and Jeffrey Grayzel on July 24, 2001 (US Publication Number 2002/0010489) and relates to new and improved stiffening elements for balloon catheters. *Id.* ¶ 14. The Patent Application matured into United States Patent, No. 7,662,163 ("the '163 Patent") on February 16, 2010. *Id.* ¶ 15. The Covenant also covered another patent application filed by Dr. Grayzel that is not at issue. *Id.* Ex. 1, § 2.2.

After the Covenant was executed, BSC developed and sold new Flextome Cutting Balloon Catheters ("Flextome Catheters"). *Id.* ¶¶ 21-22. BSC received governmental approval to sell the new products in Europe and the United States in 2005. *Id.* Dr. Grayzel alleges that these new Flextome Catheters infringe on his '163 Patent on the grounds that the word "sold" in § 3.1 of the Covenant limits it to Cutting Balloon Products already being sold at the time the Covenant was executed. *Id.* ¶ 17.

Dr. Grayzel offered BSC the opportunity to license the '163 Patent. *Id.* ¶ 25. BSC declined the offer and stated in a letter dated June 6, 2011 that the Flextome Catheters are subject to the Covenant. *Id.* ¶ 26.

Dr. Grayzel seeks a declaratory judgment that the Flextome Catheters are not protected from an infringement suit by the Covenant, that Dr. Grayzel may seek a licensing-royalty

**NOT FOR PUBLICATION**

arrangement with BSC concerning the '163 Patent, and that Dr. Grayzel may bring a patent infringement case against BSC for the '163 Patent. *Id.* ¶ 30.

Dr. Grayzel initially sued BSC in the Superior Court of New Jersey, Bergen County, Law Division on March 8, 2012. Notice of Removal, ¶ 1. BSC removed the suit to this Court under 28 U.S.C § 1332(a). *Id.* ¶ 2. BSC moved to dismiss on May 17, 2012 under Federal Rule of Civil Procedure 12(b)(6). ECF No. 7. This Court denied the motion on September 21, 2012. ECF Nos. 20-21. BSC then moved on December 4, 2012 to dismiss under Federal Rule of Civil Procedure 12(h)(3). ECF No. 28.

<strong>STANDARD OF REVIEW</strong>

Under Federal Rule of Civil Procedure 12(b)(1) a party may move for dismissal of a case based on lack of subject matter jurisdiction. A plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). When considering a motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In order for a court to exercise jurisdiction over a declaratory judgment action, there must be an actual and adverse controversy. "The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979). The Supreme Court has also noted that "district

3

**NOT FOR PUBLICATION**

courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisities." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).

To satisfy the actual and adverse controversy requirement, the party seeking declaratory judgment must "satisfy Article III, which includes standing and ripeness, by showing under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)).

Under Article III of the Constitution, the jurisdiction of federal courts extends only to the resolution of "cases" and "controversies." To demonstrate a case or controversy, a plaintiff must establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires: (1) "the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (internal citations and quotations omitted) (alterations in *Lujan*).

In addition to standing, Article III justiciability requires the case to be ripe for judicial review. In *Step-Saver Data Systems*, the Third Circuit stated that the appropriate ripeness inquiry focused on three "basic principles:" (1) "the adversity of the interest of the parties;" (2) "the

4

**NOT FOR PUBLICATION**

conclusiveness of the judicial judgment;" and (3) "the practical help, or utility, of that judgment." *Step-Saver Data Sys. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990); *see also Lewis v. Alexander*, 685 F.3d 325, 341-42 (3d Cir. 2012); *Pittsburgh Mack Sales & Serv. v. Local Union No. 66*, 580 F.3d 185, 190-91 (3d Cir. 2009).

## DISCUSSION

Typically, declaratory judgment actions in patent cases are brought by "potential infringers against patentees seeking a declaration [by the court] of noninfringement or invalidity or both." *Lang. v. Pac. Marine & Supply Co.*, 895 F.2d 761, 763 (Fed. Cir. 1990). *See also SanDisk Corp. v. STMicroelectronics NV*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights").

But this is not a typical declaratory judgment action in a patent case. As Defendant highlights, Plaintiff does not seek a resolution of a patent infringement claim, but a judgment on the scope of the Covenant in order to possibly file an infringement suit at some point in the future. Mot. at 4, 9. The Court will begin its inquiry with ripeness and its three basic principles, before turning to the question of standing: (1) "the adversity of the interest of the parties;" (2) "the conclusiveness of the judicial judgment;" and (3) "the practical help, or utility, of that judgment." *Step-Saver*, 912 F.2d at 647.

### *Adversity of Interest*

Though "a plaintiff need not suffer a *completed* harm to establish adversity of interest between the parties," "to protect against a feared future event, the plaintiff must demonstrate that

**NOT FOR PUBLICATION**

the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (quotation marks, citations, and alterations omitted) (emphasis added). A potential harm that is "contingent" on a future event occurring will likely not satisfy this prong of the ripeness test. *See Step-Saver*, 912 F.2d at 647-48; *Armstrong*, 961 F.2d at 413.

Defendant BSC argues that this case involves "contingent future events" that may not occur. Mot. at 11. Plaintiff has not indicated whether he would sue BSC for patent infringement in the future, so this judgment would be answering the "hypothetical question" of whether Plaintiff would be liable for breach of the Covenant *if* he sued BSC for patent infringement. *Id.* at 9. Plaintiff responds that there is a concrete dispute between adversarial parties regarding the interpretation of the Covenant. Opp. at 8.

Plaintiff essentially seeks assurance from the Court that if he ever decided to file a patent infringement suit, his claims would not by barred by the Covenant. This Court cannot provide such assurance. As example, in *Carrots Components Corporation*, plaintiff brought a declaratory judgment action against defendant after initiating negotiations for a patent license, seeking a declaration that defendant's patent was invalid or plaintiff's product did not infringe the patent. *See Carrots Components Corp. v. Thomas & Betts Corp.*, Civ. No. 85-5133, 1986 U.S. Dist. LEXIS 29723 (D.N.J. Feb. 11, 1986). The court held that potential future litigation was not an actual controversy upon which jurisdiction could be based: "We are not allowed to answer hypothetical questions regarding that which might arise between parties. Rather, '[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Id.* at *3 (citation omitted).

**NOT FOR PUBLICATION**

Plaintiff relies heavily on the 2007 Supreme Court case of *MedImmune, Inc. v. Genentech, Inc.*, where the Court found that the situation warranted the issuance of a declaratory judgment. 549 U.S. 118, 137 (2007). *MedImmune* involved the "application of the Declaratory Judgment Act to situations in which the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party rather than the government." *Id.* at 130. In *MedImmune*, the petitioner entered into a patent license agreement with respondent Genentech. *Id.* at 121. After, an application covered by the agreement matured into a patent, and Genentech gave petitioner notice that it was owed royalties. *Id.* Petitioner did not agree "that royalties were owing, believing that the Cabilly II patent was invalid and unenforceable . . . and that its claims were in any event not infringed[.]" *Id.* at 121-22. Petitioner did not want to risk a termination of the agreement and a patent agreement suit, so paid the royalties and filed a declaratory judgment action, seeking a statement of its obligations under the contract. *Id.* at 122. The Court found that the petitioner's own acts eliminated the "imminent threat of harm," but such acts were "coerced by threatened enforcement action of a *private party* rather than the government." *Id.* at 129-30 (emphasis in original). This case, to the contrary, does not involve any type of coercion, either in the form of threatened enforcement action by a private party or the government. *See also Armstrong World Indus.*, 961 F.2d at 422-24 (finding plaintiffs faced no "'Hobson's choice' of foregoing lawful behavior or subjecting themselves to prosecution under the challenged provision").

***Conclusiveness and Utility of the Judgment***

Plaintiff also fails to show that this action satisfies the requirements of conclusiveness and utility. Conclusiveness requires any opinion issued by this Court "to define and clarify the legal rights or relations of the parties." *Step-Saver*, 912 F.2d at 648. As in *Step-Saver*, the

7

**NOT FOR PUBLICATION**

requested declaration would not impact, or even clarify, the legal status of the parties. *Id.* Plaintiff's alleged injuries of an inability to obtain royalties under BSC's interpretation of the Covenant and the danger of breaching the Covenant would not be remedied by a judgment in Plaintiff's favor, since Plaintiff would likely then have to bring a patent suit, or at the very least, continue trying to reopen some type of dialogue with BSC, which, as BSC notes, he is free to do at any time. Mot. to Dismiss at 2, 10. As in *Carrot Components Corporation*, Plaintiff is attempting to gain "bargaining leverage" – an impermissible use of a declaratory judgment action. 1986 U.S. Dist. LEXIS 29723, at *6.

The lack of conclusiveness that a declaratory judgment would have on the legal relationship between the parties can be outweighed by the hardship of postponing judicial review. *Armstrong World Indus.*, 961 F.2d at 421-22 (finding the predominantly legal nature of plaintiffs' claims did not compensate for the claims' contingent nature and absence of hardship). Plaintiff has not demonstrated that the postponement of judicial review would cause any hardship.

Finally, utility looks at whether judgment would have any beneficial effect on the plaintiff. *Armstrong World Indus.*, 961 F.2d at 422-24. In *Step-Saver*, the Third Circuit found that this factor was not satisfied because Step-Saver would take the same steps whether or not it was granted a declaratory judgment. 912 F.2d at 650. The situation is the same in the present case. If Plaintiff were granted a declaratory judgment, he would have to continue trying to negotiate with BSC, which he can do regardless, or more likely, proceed with a patent infringement suit against BSC.

This Court holds that the case is not ripe, and it follows that it need not reach the question of standing. The Court lacks subject matter jurisdiction and remands this case to state court for

**NOT FOR PUBLICATION**

disposition. *McDowell Oil Serv., Inc. v. Interstate Fire and Cas. Co.*, 817 F. Supp. 538 (M.D. Pa. 1993).

<strong>CONCLUSION</strong>

The Court grants BSC's motion to dismiss for lack of subject matter jurisdiction and remands the case to state court.


March 13, 2013

<u>**/s/ William H. Walls**</u><br>United States Senior District Judge